*Formatted for Electronic Distribution*          *Not for Publication*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF VERMONT

_____

**In re:**
    **Pekin Brook Farm LLC,**                                                     **Case # 20-10207**
            Debtor.                                                                   **Chapter 7**
_____

**In re:**
    **Stone Wolf Cap. Mgmt. Co.,**                                      **Case # 20-10208**
            Debtor.                                                                   **Chapter 7**
_____

*Appearances:*

    Paul A. Levine, Esq.                                       Ryan M. Long, Esq.
    Lemery Greisler LLC                                  Primmer Piper Eggleston & Cramer PC
    Albany, New York                                         Burlington, Vermont
    For the Chapter 7 Trustee                       For the Trust F/B/O Dianne Rose
                                                                   U/A DTD 9/12/02

## MEMORANDUM OF DECISION
### SUSTAINING TRUSTEE'S OBJECTIONS TO CLAIM NO. 4 AS TO PEKIN BROOK FARM LLC AND CLAIM NO. 9 AS TO STONE WOLF CAPITAL MGMT. CO.

    Paul A. Levine, Esq., in his capacity as Chapter 7 Trustee in the above-referenced cases (the "Trustee") objected to Claim # 4 in the Pekin Brook Farm, LLC case and Claim # 9 in the Stone Wolf Management Co. case filed by the Trust F/B/O Dianne Rose U/A DTD 9/12/02 (the "Claimant"). For the reasons set forth below, the Court determines the Claimant has failed to meet the ultimate burden of proving the validity of its claims, and therefore sustains the Trustee's objections.

### JURISDICTION

    The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Order of Reference entered by the U.S. District Court on June 22, 2012. The Court declares this contested matter to be a core proceeding according to 28 U.S.C. § 157 (b)(2)(B), over which this Court has constitutional authority to enter a final judgment.

1

## BACKGROUND

Pekin Brook Farm LLC ("Pekin Brook") and Stone Wolf Capital Management Company ("Stone Wolf" and, collectively with Pekin Brook, the "Debtors"), filed the instant Chapter 7 cases on June 26, 2020, by and through their state-court appointed assignor for the benefit of creditors, Raymond Obuchowski, Esq.

On August 25, 2020, the Court approved the sale of Pekin Brook's real property (doc. #18). In September 2020, the Claimant filed identical general unsecured claims in each case (Pekin Brook Claim # 4, Stone Wolf Claim # 9) in the amount of $796,313.33, based upon a purported promissory note dated July 1, 2018, between Pekin Brook and the Claimant in the principal amount of $752,500. The Trustee and the Claimant engaged in informal discovery thereafter. On January 20, 2022, the Trustee filed objections to Claimant's claims (Pekin Book doc. # 53, Stone Wolf doc. # 55). On April 5, 2022, the Claimant filed opposition to the Trustee's claim objections (Pekin Brook doc. # 58, Stone Wolf doc. # 60). The Trustee filed a reply on April 8, 2022 (Pekin Brook doc. # 62, Stone Wolf doc. # 64).

After the parties engaged in formal discovery, the Court held a three-day evidentiary hearing, at which Paul A. Levine, Esq. appeared as the Trustee and counsel for the Trustee, and Ryan M. Long, Esq. appeared as counsel for the Claimant. At the conclusion of the hearing, the Court took the matter under advisement.

## FINDINGS OF FACT[1]

In 2012, Paul Rose purchased real property located at 480 Pekin Brook Road in East Calais, Vermont which was deeded in the name of his then-girlfriend, Virginia Kern (the "Property"). The Property was an undeveloped, unimproved tract of land on which Paul Rose and Virginia Kern sought to establish a year-round farming operation. Paul Rose, unable to procure conventional financing for the project, intermittently received funds from the Claimant beginning in October 2012.

Claimant provided a disbursement schedule of the funds disbursed through its trustee, Dianne Rose, who is also Paul Rose's mother. Dianne Rose would make disbursements as requested by Paul Rose. Both Dianne Rose and Herbert Rose, Paul Rose's father, testified that they regarded the disbursements as a loan to Paul Rose. Dianne Rose prepared the disbursement schedule which lists the recipient of each disbursement based on the owner of the bank account to which the funds were sent. It is undisputed that the funds were received by each recipient and used for clearing, construction, and development of the Property.

---

[1] The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), which incorporates Rule 52 of the Federal Rules of Civil Procedure. Pursuant to Bankruptcy Rule 7052, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact to the fullest extent of the law.

2

In early 2014, Paul Rose and Virginia Kern formed GP Land Management, LLC to manage and maintain the Property. In its July 28, 2014 Operating Agreement, Herbert Rose is identified as a co-manager of GP Land Management, LLC. In August 2014, Virginia Kern conveyed the Property to GP Land Management, LLC by quitclaim deed. At some point between the formation of GP Land Management and after the conveyance of the Property, Paul Rose and Virginia Kern severed personal and business ties. No evidence demonstrates Virginia Kern assigned her membership interest in GP Land Management, LLC.

On or about June 5, 2015, Herbert Rose, on behalf of GP Land Management, LLC, executed a Promissory Note in the principal amount of $602,500 for the benefit of the Claimant (the "GP Note"). The distribution schedule attached to the GP Note includes disbursements made to Paul Rose, Virginia Kern, and GP Land Management from October 12, 2012 to June 5, 2015. The GP Note was not secured by a mortgage on the Property and matured on June 30, 2017. No payments were made under the GP Note.

On July 14, 2015, after Paul Rose and Virginia Kern had severed personal and business ties, Herbert Rose formed Pekin Brook Farm, LLC to "replace" GP Land Management, LLC to manage and maintain the Property. While Herbert Rose initially testified the name change was necessary to avoid confusion by the inclusion of the word "farm," he later admitted that the name change was designed to protect the assets from any claim that could be asserted by Virginia Kern. On September 30, 2015, Herbert Rose quitclaimed the Property from GP Land Management, LLC to Pekin Brook Farm, LLC. According to Herbert Rose, at that point, GP Land Management, LLC was "dissolved."[2]

Although the timing is not entirely clear from the record, Paul Rose was diagnosed with cancer in or around 2017. Based upon his personal medical experience, he decided to shift his business plan to grow hemp and extract cannabidiol, known commonly as "CBD." Hence, he created Stone Wolf Capital Management Company ("Stone Wolf") to serve as a parent company in a vertically integrated group of limited liability companies, including Pekin Brook.

The claims at issue in this case are based upon a purported promissory note dated July 1, 2018, between Pekin Brook and the Claimant in the principal amount of $752,500 (the "Pekin Note"). The disbursement schedule to the Pekin Note is identical to that of the GP Note with an additional $150,000 identified as being disbursed to Pekin Brook Farm, LLC in three payments dated August 7, 2015, September 8, 2015, and November 9, 2015. The principal amount includes the $602,500 as set forth in the GP Note plus the $150,000 identified as disbursed to Pekin Brook Farm, LLC nearly three years prior to the date of

---

[2] The only evidence Claimant presented is a "Certificate of Resolution" signed by Herbert Rose and dated September 30, 2015, which removed Virginia Kern as manager and authorized the transfer of its assets to Pekin Brook. The resolution is silent regarding any liabilities. Herbert Rose later informed the Claimant that the Claimant had no recourse for payment under the GP Note.

3

the Pekin Note. The Pekin Note is not secured by a mortgage on the Property. There is no independent notarization or indication as to when the Pekin Note was executed. No document exists to evidence an assignment of the indebtedness of GP Land Management, LLC, Paul Rose, or Virginia Kern to Pekin Brook.

In March of 2019, Herbert Rose signed a Membership Interest Transfer Power, transferring his membership interest in Pekin Brook Farm, LLC to Paul Rose. The document is dated July 6, 2018 (the "Membership Transfer"). Herbert Rose testified he signed the Pekin Note a few days before he signed the Membership Transfer.

Paul Rose actively courted investors for Stone Wolf, seeking $2,000,000 in an initial capital raise. In connection with the capital raise, Paul Rose represented to investors he contributed $1,198,833.73 in capital for Stone Wolf, which included his membership interest in Pekin Brook. Stone Wolf became the sole member of Pekin Brook. On or around April 10, 2019, third parties, 1701 Enterprise LLC and Abigail and Sacha DuBearn (collectively, the "Investors") invested an aggregate amount of $1,000,000 in Stone Wolf. Paul Rose never disclosed the Pekin Note to the Investors.

Shortly thereafter, the relationship between Paul Rose and the Investors deteriorated, eventually determining that the best course of action would be to assign Stone Wolf and Pekin Brook for the benefit of creditors. Paul Rose and the Investors executed General Assignments for Stone Wolf and Pekin Brook, appointing Raymond J. Obuchowski as Assignee. Paul Rose, who prepared the list of creditors for each entity, did not list the Claimant among the creditors of Stone Wolf or Pekin Brook. Paul Rose passed away in December of 2019. The Claimant asserted a right to payment after the passing of Paul Rose.

The Trustee asserts the claim as to Pekin Brook should be disallowed on two bases: (1) the claim is not enforceable against Pekin Brook: the Claimant made a gift or loan to Paul Rose, rather than Pekin Brook, which did not exist at the time most of the disbursements were made; and (2) the Pekin Note is not enforceable as to the Pekin Brook disbursements because it lacks consideration. Alternatively, the Trustee asserts that the claim should be limited to the $150,000 disbursed to Pekin Brook. The Claimant argues that notwithstanding which account it disbursed funds into, all funds disbursed were used toward the construction and development of "the Farm," without regard to which entity owned the Property or received the funds.

The Trustee asserts the claim as to Stone Wolf should be disallowed on the basis that the claim is not enforceable against Stone Wolf. Alternatively, the claim as to Stone Wolf should be recharacterized as equity and subordinated to general unsecured creditors. The Claimant contends that Stone Wolf's status as Pekin Brook's parent makes Stone Wolf responsible for Pekin Brook's indebtedness.

#### DISCUSSION

**A. Applicable Standards**

Pursuant to sections 501 and 502 of the Bankruptcy Code, an executed and filed proof of claim constitutes *prima facie* evidence of the validity of the claim and is deemed allowed unless a party in interest objects. *See* §§501, 502[3]; *see also* Bankruptcy Rule 3001(f) ("A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim.")

Courts within this circuit employ a burden-shifting methodology in which a proof of claim is *prima facie* evidence of the validity and amount of a claim, and the objector bears the initial burden of persuasion. *See In re Oneida Ltd.,* 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009); *In re Cocoa Servs., L.L.C.,* No. 17-11936-JLG, 2018 WL 1801240, at *16 (Bankr. S.D.N.Y. Apr. 13, 2018). "To overcome the *prima facie* validity of the claim, the objecting party must come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim." *Sherman v. Novak (In re Reilly),* 245 B.R. 768, 773 (2d Cir. BAP 2000) (internal citations omitted); *In re Allegheny Int'l, Inc.,* 954 F.2d 167, 173-74 (3d Cir. 1992). By producing "evidence equal in force to the prima facie case," an objector can negate a claim's presumptive legal validity, thereby shifting the burden back to the claimant. *In re Weatherell*, 2010 Bankr. LEXIS 3492, *3, 2010 WL 3938225, *1 (Bankr. D. Vt. Sept. 29, 2010); *Creamer v. Motors Liquidation Co. GUC Tr. (In re Motors Liquidation Co.),* No. 12 Civ. 6074 (RJS), 2013 WL 5549643, at *3 (S.D.N.Y. Sept. 26, 2013). At that point, the claimant must prove by a preponderance of the evidence that under applicable law the claim should be allowed. *In re Oneida, Ltd.,* 400 B.R. at 389.

In support of its claims, the Claimant included in each of its proofs of claim (No. 4 in Pekin Brook and No. 9 in Stone Wolf), a copy of the Pekin Note. The first paragraph of the Pekin Note references a schedule of payments, which was not included with the Claimant's claims. At the Trustee's request, the Claimant provided a supplement to the proofs of claim, which included, among other things, the disbursement schedule. It lists the following disbursements: $225,500 to Paul Rose; $105,000 to Virginia Kern; $272,000 to GP Land Management, LLC; and $150,000 to Pekin Brook Farm, LLC. There is no dispute among the parties that the disbursements were made in accordance with the disbursement schedule. Each disbursement other than the $150,000 to Pekin Brook Farm, LLC was made prior to the creation of Pekin Brook Farm, LLC and included in the disbursement schedule attached to the GP Note.

The parties stipulated that with the provision of the disbursement schedule, the Claimant's proofs of claims are *prima facie* valid. However, the Trustee objects to the proofs of claim under §502(b)(1) on

---

[3] All statutory citations refer to Title 11 of the United States Code (the "Bankruptcy Code"), unless otherwise indicated.

the basis that the claims are unenforceable against Pekin Brook and Stone Wolf. The effect of §502(b)(1) is to make available to the Trustee any defense to a claim that would have been available to the debtors. *See Travelers Casualty & Surety. Co. v. Pacific Gas & Elec. Co.*, 549 U.S. 443, 450, 127 S.Ct. 1199, 1205, 1206, 167 L.Ed 2d 178, 186, 187 (2007). In support of his position, the Trustee highlights that the Claimant made most of the disbursements to third parties prior to the creation of Pekin Brook and there is no basis for which Pekin Brook could be responsible for those amounts. As to those funds that were disbursed to Pekin Brook, the Claimant disbursed those amounts nearly three years prior to the execution of the Pekin Note. Thus, the Trustee asserts that absent true consideration, the Pekin Note without any new consideration, renders the Pekin Note unenforceable as to Pekin Brook. The Trustee further asserts that the Stone Wolf claim should be recharacterized as equity either in Stone Wolf or as a claim against Paul Rose's estate. The Court will address each in turn.

### B. The Pekin Note as to Pekin Brook

A court must allow a claim to which objection has been made "except to the extent that ... such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." §502(b)(1). *See also In re Sanford,* 979 F.2d 1511, 1513 (11th Cir.1992); *In re Drexel Burnham Lambert Group, Inc.,* 148 B.R. 979, 981 (Bankr.S.D.N.Y.1992), *aff'd,* 158 B.R. 30 (S.D.N.Y.1993). Generally, applicable nonbankruptcy law determines the validity of claims. *See Grossman v. Lothian Oil Inc. (In re Lothian Oil Inc.),* 650 F.3d 539, 544 (5th Cir. 2011). The Pekin Note is governed by Delaware law. Ex. 6 ¶6.7.

To determine whether the Pekin Note is an enforceable agreement, this Court applies the law of contracts. Under Delaware law, the elements necessary to prove the existence of an enforceable contract are as follows: (1) the intent of the parties to be bound; (2) sufficiently definite terms; and (3) consideration. *See Otto v. Gore*, 45 A.3d 120, 138 (Del. 2012) (citing *Gallagher v. E.I. DuPont De Nemours & Co.*, 2010 WL 1854131, at *3 (Del. Super. Apr. 30, 2010)).

When interpreting a contract, the Court must "give priority to the parties' intentions as reflected in the four corners of the agreement." *Salamone v. Gorman,* 106 A.3d 354, 368 (Del. 2014). Oral testimony relevant to the interpretation of a contract is admissible and as between parties to a contract, parol evidence challenging the existence or the absence of consideration in the formation of a contract is always admissible. *Fr. Winkler KG v. Stoller*, 839 F.2d 1002, 1005 (3d Cir. 1988) (citing 3 Corbin on Contracts § 586 at 489).

Herbert Rose, the member who executed the Pekin Note, recognized that the Pekin Note is a carry forward of the obligations under the GP Note, without any accrual of interest. The Claimant asserts that because the assets of GP Land Management, LLC were transferred to Pekin Brook Farm, LLC, namely the Property, that Pekin Brook is vicariously responsible for the obligations under the GP Note (including funds

6

disbursed to Paul Rose and Virginia Kern). The Claimant never had a mortgage interest in the Property. It claims that since the funds were utilized for the clearing, construction, and development of the Property, the obligation follows the Property. The Claimant cites no case law to support its position and provides no evidence that supports an enforceable transfer of the GP Note obligations.

Parties transferring debt must record the transfer. Under Delaware law, to have a valid transfer of debt, a contract must exist between the two parties. *CertiSign Holding, Inc. v. Kulikovsky*, No. CV 12055-VCS, 2018 WL 2938311, at *24 (Del. Ch. June 7, 2018). A contract to pay the debt of another must not only be in writing, but the writing must contain on its face enough to show that the person signing it was assuming liability. *Woodcock v. Udell,* 97 A.2d 878, 881 (Del.1953). The contract must prove that the parties intended to be bound, that the terms were appropriately understood by each party, and that there was consideration between the parties. *CertiSign Holding, Inc.,* 2018 WL 2938311 at *24. The Claimant produced no writing demonstrating the assumption and/or transfer of debt obligations between Paul Rose, Virginia Kern, GP Land Management, LLC and Pekin Brook. Accordingly, the Claimant failed to prove by a preponderance of the evidence that under applicable law the claim for disbursements made to Paul Rose, Virginia Kern, and GP Land Management, LLC can be imputed to Pekin Brook. *In re Cocoa Servs., L.L.C.,* 2018 WL 1801240 at *16.

As to those funds that were disbursed to Pekin Brook, the Claimant disbursed those amounts in 2015, nearly three years prior to the execution of the Pekin Note. Based upon the timing, the Trustee asserts that absent true consideration, without any new consideration, the Pekin Note is rendered unenforceable as to the Pekin Brook disbursements. *See Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1158 (Del. 2010) ("[A] valid contract exists when (1) the parties intended that the contract would bind them, (2) the terms of the contract are sufficiently definite, and (3) the parties exchange legal consideration").

"[C]onsideration is defined as a benefit to a promisor or a detriment to a promisee pursuant to the promisor's request." *Continental Ins. Co. v. Rutledge & Co.,* 750 A.2d 1219, 1231 (Del.Ch.2000). A fundamental element of consideration is that the parties bargain for it. *Barnard v. State,* Del.Super., 642 A.2d 808, 818 (1992), *aff'd,* Del.Supr., 637 A.2d 829. A party offers consideration to induce a promise from the other party. *Id.* The Pekin Note, dated July 1, 2018, purports on its face to be executed in consideration for "value received" and the disbursement schedule reflects only three payments dated August 7, 2015, September 8, 2015 and November 9, 2015 to Pekin Brook.[4]

---

[4] The Court questions the date of the Pekin Note based upon the record before it. Herbert Rose testified that he signed the Pekin Note prior to his transfer of interest in Pekin Brook Farm, LLC to Paul Rose. However, Herbert Rose also testified that the transfer document was signed in 2019, despite being dated July 6, 2018. Nonetheless, the lapse in time is at least approximately three years.

The Claimant provided no evidence of any negotiations between the Claimant and Pekin Brook as to the Pekin Note or the timing of its execution. Dianne Rose testified that the documentation was not a "top priority" and that it was only executed at the urging of the Claimant's counsel—Pekin Brook did not make a promise to pay in exchange for a benefit to Pekin Brook or a detriment to the Claimant. Pekin Brook's promise to pay amounts it had been disbursed years earlier was not induced by receipt of the funds, which happened years earlier. Consideration for the Pekin Note cannot be built upon a "commitment to honor a pre-existing obligation" as it is deemed "neither benefit nor detriment." *James J. Gory Mech. Contracting, Inc. v. BPG Residential Partners V, LLC*, No. CIV.A. 6999-VCG, 2011 WL 6935279, at *2 (Del. Ch. Dec. 30, 2011) ("A commitment to honor a pre-existing obligation works neither benefit nor detriment; therefore, '[a] promise to fulfill a pre-existing duty, such as a promise to pay a debt owed, cannot support a binding contract' because consideration for the promise is lacking.") (quoting *First State Staffing Plus, Inc. v. Montgomery Mut. Ins. Co.,* 2005 WL 2173993, at *9 (Del.Ch. Sept. 6, 2005)); *Continental Ins. Co. v. Rutledge & Co.,* 750 A.2d 1219, 1232 (Del Ch. 2000) ("Past consideration, as opposed to true consideration, however, cannot form the basis for a binding contract.").

Based upon the facts and circumstances of this case, the Court finds that the Trustee came forth with sufficient evidence to refute the presumptive legal validity of the claim as to Pekin Brook (Claim # 4) and the Claimant failed to prove by a preponderance of the evidence that the Pekin Note is enforceable under Delaware law. Accordingly, the Court sustains the Trustee's objection to the Claimant's claim as to Pekin Brook (Claim # 4) in its entirety.

### C. The Pekin Note as to Stone Wolf

The Claimant's filed proof of claim as to Stone Wolf (Claim # 9), is based upon the Pekin Note and seeks recovery of the same amount and is, other than the case caption, identical to the Claimant's filed proof of claim in the Pekin Brook Case (Claim # 4). The Trustee asserts the claim as to Stone Wolf should be disallowed on the basis that the claim is not enforceable against Stone Wolf. Alternatively, the claim as to Stone Wolf should be recharacterized as equity and subordinated to general unsecured creditors. The Claimant contends that Stone Wolf's status as Pekin Brook's parent makes Stone Wolf responsible for Pekin Brook's indebtedness.

"[A] parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61, 118 S.Ct. 1876, 141 L.Ed.2d 43 (1998); *Ascension Tech. Corp. v. McDonald Invs., Inc.*, 327 F. Supp. 2d 271, 277–78 (D. Vt. 2003). Nor can liability be imposed on a parent corporation for the acts of its wholly owned subsidiary based solely on the parent's active participation in or control of the subsidiary. *Greene v. Long Island R. Co.*, 280 F.3d 224, 233-34 (2d Cir.2002). The corporate veil may, however, be pierced when "the

8

corporate form would otherwise be misused to accomplish certain wrongful purposes, most notably fraud." *Bestfoods*, 524 U.S. at 62, 118 S.Ct. 1876; *see also Agway, Inc. v. Brooks*, 173 Vt. 259, 262, 790 A.2d 438, 441 (2001). And in cases where the parent so dominates and controls the subsidiary that the subsidiary's separate entity is essentially disregarded, the parent may be held legally accountable for the actions of the subsidiary. *Thomson–CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 777 (2d Cir.1995); *see also Carte Blanche (Singapore) Pte., Ltd. v. Diners Club Int'l, Inc.*, 2 F.3d 24, 26 (2d Cir.1993).

The proof of claim contains no information linking the Pekin Note to Stone Wolf. The Trustee has negated the presumptive validity of the claim, shifting the burden back to the Claimant. *Creamer,* 2013 WL 5549643, at *3; *In re Weatherell*, 2010 WL 3938225 at *1. It is undisputed that Pekin Brook was wholly owned by Stone Wolf. The Claimant does not allege fraud or any other wrongdoing that would render Stone Wolf responsible for Pekin Brook's obligations.

Furthermore, the Claimant produced no evidence that liability was expressly assumed by Stone Wolf. Stone Wolf is not responsible for Pekin Brook's obligations. To assume another party's debt there must be a valid contract between the parties to that effect. *Shepard v. Com. Credit Corp.,* 123 Vt. 106, 110, 183 A.2d 525, 527-28 (1962). An assignee is responsible only for that which they "contract[ed] to undertake." *Proriver, Inc. v. Red River Grill, LLC*, 27 F. Supp. 2d 1, 6 (D.D.C. 1998). The Claimant has produced no contract between Stone Wolf and Pekin Brook for the assumption of the Pekin Note.

Based upon the lack of evidence to support Stone Wolf's liability for the Pekin Note, the Court sustains the Trustee's objection to the Claimant's claim as to Stone Wolf (Claim # 9) under §502(b)(1) and the Court need not address recharacterization.

## CONCLUSION

For the reasons set forth above, the Court disallows the claims of the Trust F/B/O Dianne Rose U/A DTD 9/12/02 as to both Pekin Brook Farm LLC and Stone Wolf Capital Management Co. under § 502(b)(1). This memorandum of decision constitutes the Court's findings of fact and conclusions of law.

_____
December 20, 2022                                          Hon. Heather Z. Cooper
Burlington, Vermont                                         United States Bankruptcy Judge

9